IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Anderson Benenhaley, | ) | CA No. 3:04-23330-CMC |
| | ) | Cr. Nos. 3:98-524 and 3:99-73 |
| Petitioner, | ) | |
| | ) | |
| -versus- | ) | **OPINION and ORDER** |
| | ) | |
| United States of America, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

Petitioner Anderson Benenhaley, a federal prisoner proceeding *pro se*, filed this application pursuant to 28 U.S.C. § 2255 on December 17, 2004. The Petition asserts: (1) that Petitioner's right to a speedy trial pursuant to the Sixth Amendment to the Constitution and the Speedy Trial Act was violated and that his counsel was ineffective for failing to raise these issues; (2) that trial and appellate counsel were ineffective for failing to raise speedy trial issues at the district court and on appeal; (3) that Petitioner is actually innocent of the charges and that counsel was ineffective for failing to raise this issue on appeal; (4) that Petitioner's Sixth Amendment rights to a fair trial were violated by "the sleeping jurors during trial" and that his counsel was ineffective for failing to raise this issue on appeal; (5) that the government committed prosecutorial misconduct by failing to correct testimony it knew to be false, and that Petitioner's counsel was ineffective for failing to raise this argument; (6) that Petitioner's rights were violated when his sentence was "enhanced based on hearsay statements" and that his counsel was ineffective for failing to raise this issue; (7) that Petitioner's rights were violated when the court enhanced his sentence "by making factual determinations resulting in an increased guideline offense level"; (8) that Petitioner's rights were violated when the court made findings which increased his criminal history category; (9) that the

district court was without jurisdiction to impose a sentence of 210 months, and; (10) that Petitioner's Sixth Amendment jury trial right was violated when the jury made factual determinations during criminal forfeiture proceedings based upon the preponderance of the evidence standard of proof. On April 11, 2005, Respondent filed a motion for summary judgment, to which Petitioner responded June 7, 2005. Following a careful review of the record, the court grants Respondent's motion for summary judgment and dismisses the petition for the reasons set forth below.

## I. Background

### A. The 1998 Indictment

Petitioner was indicted in this district along with several co-defendants on two drug-related charges on May 20, 1998. This indictment was assigned D.S.C. Criminal Number 3:98-524 ("The 1998 Indictment"). The original 1998 Indictment charged Petitioner with involvement in a conspiracy to distribute methamphetamine in violation of 21 U.S.C. §§ 841 and 846 and a specific instance of distribution of methamphetamine in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. On July 21, 1998,[1] a Superseding Indictment was filed. This superseding indictment added criminal forfeiture allegations as well as a charge against Petitioner of being a felon possession of a firearm in violation of 18 U.S.C. § 922(g) and 924(a). The 1998 Indictment was superseded a second time on September 1, 1998; however, this indictment did not add new charges as to Petitioner.[2] Due to a series of continuances, the 1998 Indictment was set for trial during the trial

---

[1]The court's docket sheet indicates the Superseding Indictment was filed July 22, 1998. However, the original Superseding Indictment and its corresponding grand jury ballot both have a "July 21, 1998" file stamp.

[2]Even though there were two Superseding Indictments in this case, the court will refer to this matter as "the 1998 Indictment."

court's February, 1999 term of court.[3]  On February 8, 1999, after a jury was seated, but before it had been sworn in by the clerk, Respondent reported that it was unable to locate its main witness on the drug charges.  Respondent moved for a continuance, which the district court denied.  Respondent then moved to dismiss the drug charges, including the forfeiture allegations, without prejudice, which the district court granted.  The district court severed Petitioner's remaining firearms charge from that of a co-defendant, setting Petitioner's trial date on that remaining charge during its March, 1999 term of court.  On March 23, 1999, Petitioner entered a guilty plea to the felon in possession charge pursuant to a plea agreement with Respondent.

**B.  The 1999 Indictment**

On February 17, 1999, Respondent returned to the grand jury and re-indicted Petitioner on drug charges nearly identical to those dismissed in the 1998 Indictment.[4]  The 1999 indictment was assigned D.S.C. Criminal Number 3:99-73 ("The 1999 Indictment").  Due to a continuance, to which Petitioner assented, the 1999 Indictment was set for trial during the district court's July, 1999 term of court.  Petitioner proceeded to trial on July 12 and 13, 1999.  Petitioner was convicted on both drug counts on July 13, 1999.  The jury also found for Respondent on the forfeiture allegations, finding Petitioner should forfeit $85,000.00 to Respondent.

---

[3]Petitioner was originally tried before and sentenced by the Honorable Dennis W. Shedd. Judge Shedd has since been elevated to the Fourth Circuit Court of Appeals.  On remand, Petitioner's case was assigned to this court for resentencing and other post-conviction matters.

[4]The 1999 Indictment added marijuana and cocaine to the methamphetamine distribution conspiracy alleged in Count One.

### C. The Original Sentencing and Appeal

On May 25, 2000, Petitioner was sentenced by the district court on all counts of conviction in both indictments. Petitioner raised several objections to the Presentence Report (PSR) relating to the 1999 Indictment convictions, which were either overruled or withdrawn at sentencing. The district court sentenced Petitioner to life imprisonment on the drug conspiracy count and to 120 months' imprisonment on the drug distribution count of the 1999 Indictment. The court also sentenced Petitioner to 120 months' imprisonment for the 1998 Indictment (felon in possession).[5] All these sentences were to be served concurrently. Petitioner appealed his drug conspiracy conviction and attendant life sentence in the 1999 Indictment to the Fourth Circuit Court of Appeals.

While Petitioner's case was on appeal, the United States Supreme Court decided *Apprendi v. New Jersey*, 530 U.S. 466 (2000). The Fourth Circuit upheld Petitioner's conviction but, in light of *Apprendi*, remanded the case to the district court for resentencing. *See United States v. Benenhaley*, 281 F.3d 423 (4th Cir. 2002), *cert. denied*, 537 U.S. 869 (2002).

### D. Resentencing and Appeal

On June 19, 2003, Petitioner was resentenced by this court. Petitioner noted objections to the PSR, which were overruled at sentencing. Petitioner was sentenced to 210 months' imprisonment on the 1999 Indictment,[6] to be served concurrently with the previously-imposed 120-month sentence on the felon in possession charge (the 1998 Indictment). Petitioner thereafter noted another appeal to the Fourth Circuit, which affirmed the sentence imposed by this court. *See United*

---

[5]All of these sentences carried periods of supervised release which are not relevant to this matter.

[6]On remand, the sentence imposed combined the counts of conviction for sentencing purposes.

4

*States v. Benenhaley*, 95 Fed. Appx. 501 (4th Cir. 2004). Petitioner thereafter timely filed this motion pursuant to 28 U.S.C. § 2255.

### E. Summary

The important procedural aspects of the 1998 and 1999 Indictments are summarized below in chart form.

| CR 3:98-524 | | | |
|---|---|---|---|
| | Date Filed | Disposition and Date | Notes |
| **Indictment** (Pet'r: Count One (21:841(a)(1) and 846) and Seven (21:841(a)(1) and 18:2)) | 5/20/98 (Arr. 5/27/98; pretrial motions filed 5/28/98; Pet'r ordered detained pending trial – 6/1/98) | Dismissed 2/8/99 | Original Indictment dismissed when all drug charges dismissed without prejudice 2/8/99 |
| **Superseding Indictment** (Pet'r: Count One (21:841(a)(1) and 846), Eight (21:841(a)(1) and 18:2), and Ten (18:922(g) and 924(a)); Forfeiture allegations added | 7/21/98 (Arr. 8/10/98) | Dismissed 2/8/99 | Superseding Indictment dismissed when all drug charges dismissed without prejudice 2/8/99 |
| **Second Superseding Indictment** (Pet'r : Count One (21:841(a)(1) and 846), Six (21:841(a)(1) and 18:2), and Eight (18:922(g) and 924(a)) | 9/1/98 (Arr. 9/17/98) | Drug charges (Counts One and Six) dismissed 2/8/99 without prejudice on motion of Respondent | Firearms charge (Count Eight) remained pending; severed from trial of co-defendant; set for trial 3/99 term of court |
| Jury Selection: Second Superseding Indictment | 1/7/99 | Petit jury selected 1/7/99 | Trial set for 1/25/99; Case continued to 2/99 term of court |
| Jury Selection: Second Superseding Indictment | 2/3/99 | Petit jury selected 2/3/99 | Trial set to begin 2/8/99 |
| Motion to Dismiss without prejudice | 2/8/99 | Granted by oral ruling 2/8/99 | Drug charges dismissed; Firearms charge severed; trial set for 3/99 term of court |
| Plea Agreement | 3/2/99 | Plea entered 3/23/99 | |
| Sentencing | 5/25/00 | 120 months' imprisonment on firearms charge; J&C Order entered 5/31/00 | Pet'r did not appeal conviction or sentence in 1998 Indictment (firearms charge) |

| CR 3:99-73 | | | |
|---|---|---|---|
| | Date Filed/Date Action Taken | Disposition | Notes |
| Indictment (Pet'r: Counts One (21:841(a)(1) and 846) and Six (21:841(a)(1) and 18:2) (including forfeiture allegations) | February 17, 1999 (Arr. 3/2/99; Pet'r files waiver of detention hearing 3/11/99; pretrial motion filed 3/22/99) | Guilty on Counts One and Six | On 4/12/99, district court granted severance of co-defendant; Petr's case continued to May, 1999 term of court; on May 3, 1999, Pet'r joined in continuance motion of another co-defendant to continue to July 1999 term of court – granted by district court |
| Jury Selection Begun | July 7, 1999 | Petit jury selected; trial set for 7/12/99 | |
| Jury Trial and Verdict | July 12 and 13, 1999 | Guilty on Counts One and Six; jury also finds for Respondent on forfeiture allegations; finds $85,000 should be forfeited to Respondent | |
| Sentencing | May 25, 2000 | Life Imprisonment on Count One; 120 months' imprisonment on Count 6; J&C Order entered 5/31/00 | Appeal to Fourth Circuit; Sentence vacated in light of *Apprendi*. |
| Resentencing | June 19, 2003 | 210 months' imprisonment on Counts One and Six; to run concurrently with sentence imposed in 1998 Indictment | Second appeal to Fourth Circuit; sentence affirmed |

## II. Discussion

Petitioner's first six contentions seek relief under the guise of ineffective assistance of counsel. The standard governing the court's consideration of ineffective assistance of counsel claims is found in *Strickland v. Washington*, 466 U.S. 668 (1984). In order to succeed on such a claim, Petitioner must first show his counsel's performance was "deficient," *Strickland*, 466 U.S. at 687-88, and that such deficiency resulted in actual prejudice to Petitioner. *Id*. As to the first prong of the *Strickland* test, a defense attorney's conduct is deficient if it fails to meet a standard of

"reasonably effective assistance." *Id*. at 687. The question whether counsel's performance was deficient may only be answered by viewing counsel's actions or decisions in the light of all surrounding circumstances at the time the decision was made, not in the artificial light of hindsight. *See Lockhart v. Fretwell*, 506 U.S. 364, 371-72 (1993). A reviewing court should not second-guess defense counsel's tactical decisions. *See McDougall v. Dixon,* 921 F.2d 518, 537-39 (4th Cir. 1990).

In addition to showing ineffective representation, Petitioner must also show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. In certain cases, the question whether counsel's performance was deficient may be bypassed if it is determined that the claimed deficient representation did not prejudice the defendant. *Id.* at 697.

**A.i.   Ground One: Ineffective Assistance of Counsel – Timeliness of Indictment (Firearms Charge)**

Petitioner's first argument in Ground One claims counsel (both trial and appellate) were ineffective in not arguing a violation of the Speedy Trial Act ("STA") related to the firearms charge in the 1998 Indictment. Petitioner contends his indictment on this charge, added in the July 21, 1998 Superseding Indictment, violated the STA because he was not indicted within thirty days of his arrest *on that charge*. Petitioner contends counsel was ineffective in allowing him to plead guilty to the firearms charge in the 1998 Indictment and that he would have proceeded to trial had he known about this "essential defense." Respondent maintains Petitioner's arrest on May 27, 1998 was for the drug charges in the 1998 Indictment, and that the firearms charge was not a charge for which he was arrested at that time.

The court agrees with Respondent. Petitioner was arrested May 27, 1998 on a warrant issued pursuant to the original 1998 Indictment. This warrant listed the drug charges as the pending charges for which Petitioner was to be arrested. Petitioner was found in possession of a firearm when he was arrested. The date of the *firearms* offense, therefore, was May 27, 1998. Respondent provides an affidavit of Petitioner's trial counsel averring counsel saw no meritorious argument in Petitioner's claim of a speedy trial violation.

The STA provides, in relevant part, that "[a]ny information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection *with such offense*." 18 U.S.C.A. § 3161(b) (emphasis added). If the Government fails to comply with this requirement, the charges "shall be dismissed or otherwise dropped." 18 U.S.C.A. § 3162(a)(1). *See also United States v. Giwa*, 831 F.2d 538, 541 (5th Cir.1987) (noting if defendant arrested on criminal complaint, Government must indict on charges contained in the complaint within thirty days or face a violation of the Speedy Trial Act).

Petitioner's arrest on May 27, 1998 was not because he had been found with a firearm; rather, it was for the charges in the original 1998 Indictment. Therefore, not only is the underlying substantive argument unavailing,[7] but Petitioner makes no credible showing his attorney rendered ineffective assistance of counsel or that he would have proceeded to trial on this charge. Consequently, the court finds Respondent is entitled to summary judgment on this claim and it is dismissed with prejudice.

---

[7]The court notes that if Petitioner had pursued a speedy trial claim without arguing ineffective assistance of counsel, such a claim would be procedurally defaulted. *See Bousley v. United States*, 523 U.S. 614, 622 (1998).

8

**A.ii.  Ineffective Assistance of Counsel – Timeliness of Indictment (Drug Conspiracy Charge)**

Petitioner also maintains in Ground One that his counsel was ineffective for not challenging alleged STA violations relating to the 1999 Indictment on the drug conspiracy and distribution charges.[8]  Petitioner argues the 1999 Indictment, "which added **different charges** based upon **different facts**," was untimely under the STA.  Respondent maintains Petitioner's argument is flawed because had the 1999 Indictment been for different charges based upon different facts, Respondent would have had an *additional* seventy days in which to bring Petitioner to trial.  In other words, the seventy-day trial clock would have re-started upon Petitioner's arraignment on the 1999 Indictment.

Petitioner argues his counsel was ineffective in not challenging the 1999 Indictment, and had counsel done this "there is a reasonable probability that this count would have been dismissed."  Pet. at 14, filed Dec. 17, 2004.  Respondent provides affidavits of both trial and appellate counsel, indicating both attorneys felt there was no merit to this contention.  *See* Aff. Jack B. Swerling and Deborah R.J. Shupe, filed Apr. 11, 2005.  Petitioner has submitted his own affidavit in response to the affidavits of counsel, averring trial counsel never discussed any pretrial motions with him, and that he specifically instructed appellate counsel to raise the speedy trial issue on appeal.

Petitioner's STA claim lacks merit.  The record of the underlying criminal charges shows no STA violation.  If the seventy-day clock had restarted upon Petitioner's arraignment on the 1999 Indictment, then he clearly was tried within seventy days.  If, on the other hand, the seventy-day clock did *not* restart, it appears Petitioner still was brought to trial with the seventy-day time period.

_____

[8]See discussion at I.A-E, *supra*.

Petitioner was arraigned on the 1998 Indictment on May 27, 1998.  The next day, his court-appointed counsel filed three pretrial motions, which remained pending until jury selection commenced on the 1998 Indictment on January 7, 1999.  *See United States v. Dorlouis*, 107 F.3d 248, 253-54 (4th Cir. 1997) (period pretrial motions pending automatically excluded and delay in resolving outstanding pretrial motions need not be reasonable for period to be excluded).  *See also United States v. A-A-A Elec. Co.*, 788 F.2d 242, 246 (4th Cir. 1986) (trial commences when voir dire (jury selection) begins).  This means the STA clock was tolled for entire period between Petitioner's arraignment and the dismissal of the drug charges in the 1998 Indictment on February 8, 1999.[9]

Petitioner was arraigned on the 1999 Indictment on March 2, 1999.  *See* 18 U.S.C. § 3161(h)(6) (if indictment dismissed on motion of the Government and then defendant re-indicted "for same offense, or any offense required to be joined with that offense, any period of delay from the date the charge was dismissed to the date the time limitation would commence to run as to the subsequent charge" is excluded from statutory speedy trial calculations).  Respondent filed a motion for reciprocal discovery on March 22, 1999, which was disposed of at a pretrial conference on July 1, 1999.  Additionally, on April 28, 1999, Petitioner consented to a continuance of the trial of his case until July 7, 1999.  On July 2, 1999, Petitioner filed a motion for *voir dire* examination in anticipation of drawing a jury on July 7, 1999.  According to these dates, the time period from March 3-22 ,1999 (the day after arraignment until Respondent filed its motion) (twenty days), would be non-excludable time under the STA.  The time period from March 22 to July 7, 1999, however, was excludable because there was at least one pending motion during that time, and Petitioner had consented to the continuance of his trial until July 7, 1999.  *See* 18 U.S.C. § 3161(h)(1)(F) (time during which any pretrial motion is pending is excludable under the STA).  On July 7, 1999, the

---

[9]Although the case was delayed into the district court's February, 1999 term of court, the district court had filed a continuance order.

parties selected a jury in Petitioner's case, thereby stopping the speedy trial clock.[10]  Therefore, the court finds Petitioner's contentions of speedy trial violations regarding both the drug conspiracy and firearms charges are without merit.[11]

Petitioner also argues in this ground, and in his second ground for relief, that his constitutional right to a speedy trial under the Sixth Amendment to the Constitution was violated, and counsel's alleged failure to raise this issue in the district court and on appeal deprived him of effective representation.

The test for determining whether an individual's constitutional speedy trial rights have been violated was enunciated in *Barker v. Wingo*, 407 U.S. 514 (1972).  Courts are to apply a four part balancing test when examining a claim of a Sixth Amendment speedy trial violation.  The elements of this test consist of "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant."  *Barker*, 407 U.S. at 530.  In order to prevail, a defendant asserting his constitutional right to a speedy trial must establish that "on balance, [the] four separate factors weigh in his favor."  *United States v. Thomas*, 55 F.3d 144, 148 (4th Cir. 1995).  After applying the four *Barker* factors to Petitioner's case, the court finds these factors do not weigh in Petitioner's favor.  As to the length of delay, the Supreme Court has held that a delay of over a year in bringing a defendant to trial "marks the point at which courts deem the delay unreasonable enough

---

[10]As noted by Respondent in its motion for summary judgment, Petitioner's assertions are analogous to speedy trial contentions raised by one of Petitioner's co-defendants, Michael Osteen (Osteen).  Osteen's speedy trial arguments were rejected by the Fourth Circuit in *United States v. Osteen*, 254 F.3d 521 (4th Cir. 2001).

[11]If the seventy-day trial clock did *not* stop upon the dismissal of the drug charges from the 1998 Indictment, Petitioner was still brought to trial within seventy days.  Since no time had run during the pendency of the 1998 Indictment (because of the filing of the pretrial motions by Petitioner's court appointed counsel the day after arraignment), if the trial clock restarted on February 9, 1999, and stopped on March 22, 1999 (the date of filing of a pretrial motion), only forty-two (42) days expired.

to trigger the *Barker* enquiry." *Doggett v. United States*, 505 U.S. 647, 652 n.1 (1992). The reasons for delay are necessarily dependent upon the facts of each case. Petitioner's drug charges did not come to trial for over a year, yet a substantial period of that delay was agreed to by Petitioner.[12] After consideration, the court finds the delay in bringing Petitioner to trial on the drug charges was not "presumptively prejudicial," *Barker*, 407 U.S. at 530, and therefore this factor does not militate in Petitioner's favor.

The second factor to be analyzed is reasons for the delay. Respondent advances as reasons for delay its ongoing investigation, the unavailability of its main witness, "acts of God,"[13] and judicial economy. Petitioner responds by contending that "none of these reasons for the delays are justifiable or excusable." Reply to Resp. at 10-11, filed June 7, 2005. The court finds the reasons advanced by Respondent are plausible, justifiable reasons for delay.

The third factor for examination is whether Petitioner asserted his speedy trial right during the course of the proceedings. On June 17, 1998, Petitioner filed a motion in the 1998 Indictment to "Adopt All Motions Filed by Co-Defendants."[14] On September 4, 1998, Petitioner's co-defendant, Michael Osteen, filed a *pro se* motion to dismiss the indictment for alleged violations of his speedy trial rights. On October 28, 1998, the district court issued an order denying Osteen's motion, finding

---

[12]On October 26, 1998, at a pretrial conference on the 1998 Indictment, Petitioner, through counsel, indicated he did not consent to a continuance of the case. The case had been set for trial during the district court's November, 1998 term of court. Petitioner was being held in custody pending trial, was ready to proceed to trial and objected to the "continuance." However, a co-defendant had been arrested October 20, 1998. Pursuant to 18 U.S.C. § 3161(h)(7), because no motion for severance had been granted, that co-defendant's 70-day clock thereafter controlled when the case would be tried. *See, e.g.*, *United States v. Carey*, 746 F.2d 228, 231 (4th Cir. 1984).

[13]These circumstances were an illness of the district judge and death of defense counsel's mother at the end of January, 1999.

[14]This motion was never formally granted by the court; rather, it remained pending in the 1998 Indictment until a jury was selected on January 7, 1999, at which time all pending motions were terminated.

12

no speedy trial violation. While it can be argued Petitioner "asserted" his right to a speedy trial via his Motion to Adopt, the court's order only addressed Osteen, and Petitioner neither reasserted his own speedy trial contentions nor sought to have the court amend its order to address his alleged concerns. Additionally, Osteen's motion related to his *statutory* right under the STA, not those rights secured by the Constitution. This factor, therefore, does not mitigate in Petitioner's favor.

The last factor is prejudice to the Petitioner. Prejudice is analyzed according to its impact on the defendant, namely "(1) to prevent undue and oppressive incarceration prior to trial, (2) to minimize anxiety and concern accompanying public accusation and (3) to limit the possibilities that long delay will impair the ability of an accused to defend himself." *Smith v. Hooey*, 393 U.S. 374, 378 (1969). The most important consideration of these is "the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Barker*, *supra*, 407 U.S. at 532. Petitioner has provided no evidence of prejudice to his case due to the delay.

Petitioner argues his counsel (both trial and appellate) were ineffective for failing to raise this alleged constitutional violation of Petitioner's speedy trial right. However, Petitioner makes no plausible showing how counsel's failure to raise these arguments prejudiced him. Accordingly, the court finds Respondent is entitled to summary judgment as to this claim and it is dismissed with prejudice.

**B. Ground Two: Ineffective Assistance for Failure to Challenge Alleged Violations of Speedy Trial Act**

Petitioner argues in his second ground for relief that counsel were ineffective for failing to raise a violation of the STA and, in fact, his statutory speedy trial rights were violated. As discussed above, the underlying issue of violation of the STA has no merit, and Petitioner has presented no

plausible argument regarding the ineffectiveness of his counsel in this regard.   Therefore, Respondent is entitled to summary judgment on this claim and it is dismissed with prejudice.

### C.  Ground Three: Actual Innocence

Petitioner's third argument is that his counsel was ineffective for failing to argue that there was insufficient evidence to convict him of the drug conspiracy count.  Petitioner's filings, however, do not address any actions of counsel.  Petitioner instead argues he should be granted an evidentiary hearing "due to counsel's failure to raise a sufficiency of the evidence argument on appeal."  Pet. at 22, filed Dec. 17, 2004.

Petitioner attempted to raise the assertion regarding sufficiency of evidence relating to his conspiracy conviction on his *second* direct appeal.  The Fourth Circuit found this matter to be foreclosed by the mandate rule.  *See United States v. Benenhaley*, 95 Fed. Appx. 501, 504 n.4 (4th Cir. 2004).  The mandate rule "forecloses litigation of issues decided by the district court but foregone on appeal or otherwise waived."  *United States v. Bell*, 5 F.3d 64, 66 (4th Cir. 1993).  Because Petitioner is precluded from raising this claim directly, he attempts to re-invigorate it via an ineffective assistance of counsel claim.

Beyond conclusory statements regarding counsel's ineffectiveness, Petitioner has failed to make any credible showing relating to alleged deficiency of counsel on this claim.  Therefore, Respondent is entitled to summary judgment on this claim and it is dismissed with prejudice.

### D.  Ground Four: Sleeping Jurors

Petitioner's fourth claim for relief contends Petitioner was deprived of his Fifth Amendment Due Process right to a fair trial because of alleged sleeping jurors.  Petitioner contends his counsel were ineffective in failing to move for a mistrial or raise this matter on appeal.  To succeed on this

argument, Petitioner would have to prove the outcome of the trial would have been different had counsel requested the jurors be removed.

The issue of whether to dismiss a sleeping juror falls within the wide discretionary authority of the trial court. *See United States v. Freitag*, 230 F.3d 1019 (7th Cir. 2000). It appears from the record of the trial that the possibility of sleeping jurors was raised in the first instance by the trial judge. After the court's initial observation, none of the parties was sure the jurors had been sleeping.[15] After discussion with the parties, the court addressed the jury as a whole and stressed the importance of alert attention during the proceedings. After this instruction to the jury, there was no further discussion of the problem.

Petitioner has presented no evidence of prejudice to his case. The district court and parties did not feel the issue was serious enough to identify, beyond physical description, the jurors in question. Moreover, Petitioner makes no showing these individuals even took part in the deliberations on his case. Because Petitioner has provided no plausible argument regarding counsel's ineffectiveness in this regard, the court finds Respondent is entitled to summary judgment on this ground for relief and it is, therefore, dismissed with prejudice.

**E. Ground Five: Prosecutorial Misconduct**

Petitioner's fifth ground for relief argues Respondent committed prosecutorial misconduct by failing to correct alleged "false" testimony of one of its witnesses, Drug Enforcement Agency (DEA) Special Agent Joseph Kirincich (Kirincich). Petitioner believes he received ineffective assistance of counsel because counsel failed to challenge this witness's testimony. Kirincich testified that an informant with whom agents had worked had not had any "charges on him," and therefore

---

[15]The trial court noted concern that one male juror may have been sleeping during the testimony of co-defendant Thomas David Secor late in the afternoon of July 12, 1999. During the discussion regarding that juror, Respondent indicated one of its case agents had noticed a female juror may have been dozing at the same time.

the only "compensation" he (the informant) received for his participation in the investigation was monetary. Petitioner asserts Kirincich's testimony was false and Respondent was aware of this alleged falsity.

Prior to trial, Respondent provided a letter to Petitioner's counsel outlining the compensation received by this informant. *See* Ex. 3 to Pet. filed Dec. 17, 2004. This "compensation" consisted of money and the apparent dismissal of a traffic ticket that had been received by the informant.[16] Petitioner contends his counsel knew Kirincich's testimony was "false," and that counsel was therefore ineffective in failing to challenge the testimony or raise the alleged falsity on appeal.

Respondent maintains Kirincich testified as to his *own* understanding of the compensation provided to the cooperating witness, and therefore the testimony was not false. Additionally, Respondent has provided the affidavit of trial counsel who avers Kirincich was "fully cross-examined as to all issues that I deemed relevant and important to the case," noting that "there was no reason to impeach the agent regarding any favorable treatment for [the informant], since [the informant] did not know the Petitioner, did not testify about the Petitioner, and I asked no questions of [the informant] on cross-examination." Aff. Jack B. Swerling, at 2, filed Apr. 11, 2005. Petitioner responds by asserting that had the jury "learn[ed] that two of the government's key witnesses were testifying falsely, it is more likely than not that the jury would have been hesitant to believe any of the government's witnesses and would have voted to acquit." Reply at 22-23, filed June 7, 2005.

Petitioner's assertion regarding the outcome of the trial is speculation. Additionally, Petitioner presents no evidence Kirincich possessed any personal knowledge beyond that to which

---

[16]The letter also mentions a state bench warrant which had been issued for the informant's wife. This bench warrant was apparently dismissed after information was provided to the prosecuting state agency by Respondent. Notably, the letter's contents show that none of the actions taken on behalf of the informant were by Kirincich.

he testified.  Petitioner presents no credible theory of counsel's alleged ineffectiveness on this ground.  The court finds Respondent is entitled to summary judgment on this ground, and it is dismissed with prejudice.

### F.  Ground Six: Sixth Amendment Violation of Confrontation Clause

Petitioner's sixth ground for relief argues his Sixth Amendment rights were violated when Petitioner's "sentence was enhanced based on hearsay statements that violated [Petitioner's] right to confrontation." Pet. at 27, filed Dec. 17, 2004.  Petitioner presents this argument pursuant to the recent Supreme Court case of *Crawford v. Washington*, 541 U.S. 36 (2004).  Petitioner did not raise this argument on appeal and raises it in this § 2255 motion under the rubric of ineffective assistance of counsel.  Respondent submits that the court did not rely on hearsay in calculating Petitioner's sentence.

For the reasons stated in the response to the Petition, the court finds this argument is without merit.  The record establishes the drug amounts attributed to Petitioner were not based upon hearsay, but rather upon the testimony of trial witnesses whom Petitioner had ample opportunity to–and did–cross-examine.  Petitioner's argument on the underlying issue is unavailing, as is his assertion regarding counsel's action.  Respondent is therefore entitled to summary judgment on this ground and it is dismissed with prejudice.

### G.  Grounds Seven, Eight, Nine, and Ten: Fifth and Sixth Amendment Violations

Petitioner's remaining grounds for relief relate to the recent Supreme Court decisions of *Blakely v. Washington*, 542 U.S. 296 (2004), and *Shepard v. United States*, 543 U.S. ____, 125 S.

Ct. 1254 (2005).[17]  Petitioner makes no assertions in these grounds for relief regarding actions of counsel.[18]

Petitioner's seventh ground for relief asserts the court's factfinding at sentencing violated his Fifth and Sixth Amendment rights under *Apprendi*, as enunciated in *Blakely*.  Petitioner's eighth ground for relief argues the court engaged in prohibited fact-finding regarding Petitioner's prior convictions in contravention of the rule in *Shepard*, resulting in an "illegal" increase in his criminal history points.  Petitioner's ninth ground for relief maintains this court was without jurisdiction to impose a sentence upon Petitioner because all fact-finding resulting in any increased penalty must be performed by a jury.  Petitioner's last ground for relief argues the court erred when it instructed the jury to base its findings during criminal forfeiture proceedings upon a preponderance of the evidence standard, in contravention of his Sixth Amendment rights.

Respondent's return to these grounds relies on a non-retroactivity argument.  Respondent points to the recent case of *Schriro v. Summerlin*, 542 U.S. 348 (2004), for the proposition that because the Supreme Court has determined *Apprendi* is not retroactive to cases on collateral review, the same holds true for the *Blakely* decision.  Petitioner believes the retroactivity issue does not apply to his Petition because his claims "involve the Supreme Court's **clarification** of its prior decision in *Apprendi*,"  Reply at 27, filed June 7, 2005.

**G.i.  Ground Seven: *Blakely v. Washington***

---

[17]At the time Petitioner submitted his petition, the Supreme Court had decided *Blakely*, but not *United States v. Booker*, 543 U.S. ___, 125 S. Ct. 738 (2005), the case which applied the *Blakely* decision to the federal sentencing guidelines.  The *Shepard* decision was issued March 7, 2005.

[18]Petitioner makes a reference to ineffectiveness of counsel in Ground Eight, yet with no evidence or particularized assertions.  As Petitioner's assertion is made only in passing, the court finds this argument to be insufficient to warrant the court's consideration.

As noted above, Petitioner's seventh claim relies on the *Blakely* decision for relief. Petitioner argues the *Apprendi* decision dictated the *Blakely* result, and he should benefit accordingly.

The court disagrees. While *Apprendi* may have been a harbinger of the result ultimately reached in *Blakely*, it simply cannot conclusively be said that *Blakely*'s end result was readily apparent from the *Apprendi* ruling.[19] "[T]he [Supreme] Court has made clear that language of this type [the *Blakely* language that indicates it is "apply[ing]" the *Apprendi* rule] is not necessarily dispositive in the 'new rule' analysis." *Morris v. United States*, ___ F.3d ___, 2005 WL 2950732 at *4 n.7 (4th Cir. Nov. 7, 2005). *See also Butler v. McKellar*, 494 U.S. 407, 415 (1990) ("[T]he fact that a court says that its decision is within the 'logical compass' of an earlier decision, or indeed that it is 'controlled' by a prior decision, is not conclusive for purposes of deciding whether the current decision is a 'new rule' under *Teague* [*v. Lane*, 489 U.S. 288 (1989)]. Courts frequently view their decisions as being 'controlled' or 'governed' by prior opinions even when aware of reasonable contrary conclusions reached by other courts.")

Respondent has argued the non-retroactivity of the *Blakely* decision. In a recent decision by the Fourth Circuit, the court held the *Blakely* decision, as applied to the federal sentencing guidelines in *Booker*, is not retroactively applicable to cases on collateral review. *Morris v. United States*, ___ F.3d ____, 2005 WL 2950732 (4th Cir. Nov. 7, 2005). Therefore, the court finds Respondent is entitled to summary judgment on Petitioner's seventh ground for relief, and it is dismissed with prejudice.[20]

_____

[19]As noted by the Fourth Circuit, although Petitioner "based [his] claim on *Blakely*, [his] claim is for all practical purposes now governed by the intervening decision in *Booker*." *Morris v. United States*, 2005 WL 2950732 at *3 n.5 (4th Cir. Nov. 7, 2005).

[20]If the court were to conduct an independent retroactivity analysis under *Teague v. Lane*, 489 U.S. 288 (1989), the first step in that analysis would be to determine when Petitioner's conviction became final. Petitioner's conviction did not become final until after *Blakely* was decided. Petitioner's convictions resulting from the 1999 Indictment were upheld on his first direct appeal,

### G.ii. Ground Eight: *Shepard v. United States*

Petitioner's eighth ground for relief argues that under *Shepard*, *supra*, the court committed Sixth Amendment error when it considered his criminal history in sentencing him. Petitioner argues *Shepard* stands for the proposition that the Supreme Court's decision in *Almendarez-Torres v. United States*, 523 U.S. 224, (1998), is no longer good law. Petitioner contends that this means criminal history should not be taken into consideration when a defendant is sentenced. While the Petition was filed before the Supreme Court decided *Shepard*, Petitioner does not alter his argument in filings made in this case after *Shepard* was decided.

Petitioner did not raise this claim on direct review. Therefore he may not ordinarily assert such a claim absent cause and prejudice, or actual innocence. *See Bousley v. United States*, 523 U.S. 614, 622 (1998). Even if this claim were not procedurally defaulted, Petitioner cannot prevail on this point. *Shepard* addresses the *method* courts use to review predicate offenses, not that such offenses can *not* be used by courts in determining sentences, or that prior convictions must be charged in indictments and proven to a jury beyond a reasonable doubt. *Shepard*, 543 U.S. at ___, 125 S. Ct. at 1262 ("[A]ny fact *other than a prior conviction* sufficient to raise the limit of the possible federal sentence must be found by a jury, in the absence of any waiver of rights by the defendant.") (citation omitted).

---

and the case was thereafter remanded for resentencing only. However, the finality of Petitioner's convictions is determined only after both the counts *and* sentences associated with those counts are final. *See United States v. Dodson*, 291 F.3d 268, 272 (4th Cir. 2002).

The Fourth Circuit issued its decision in Petitioner's second appeal on April 22, 2004. Petitioner thereafter had ninety (90) days to file a petition for writ of certiorari with the United States Supreme Court, which he did not do. *See Clay v. United States*, 537 U.S. 522 (2003). Thus, Petitioner's conviction was *not* final prior to the decision in *Blakely*. However, as noted above in note 19, the *Booker* decision is the decision that governs Petitioner's circumstance, and Petitioner's conviction was final before the *Booker* decision.

Additionally, *Shepard* did not overrule *Almendarez-Torres*. *See United States v. Cheek*, 415 F.3d 349, 352 (4th Cir. 2005) (noting that "the Supreme Court continues to hold that the Sixth Amendment (as well as due process) does not demand that the mere fact of a prior conviction used as a basis for a sentencing enhancement be pleaded in an indictment and submitted to a jury for proof beyond a reasonable doubt."). *See also United States v. Thompson*, 421 F.3d 278, 282 (4th Cir. 2005) ("In short, the 'fact of a prior conviction' remains a valid enhancement even when not found by the jury."). Therefore, Respondent is entitled to summary judgment on this ground and it is dismissed with prejudice.

### G.iii. Ground Nine

Petitioner's ninth ground for relief contends that since *Blakely*, "it has become clear that any fact which increases a defendant's sentence in any way must be determined by a jury or admitted under oath during a plea colloquy." Pet. at 42, filed Dec. 17, 2004. This argument fails. When the Supreme Court applied *Blakely* to the federal sentencing guidelines in *Booker*, the Court did not transfer all authority and responsibility to juries to find all facts related to punishment. By removing the mandatory application of the guidelines, the Supreme Court excised the offending nature of the guidelines which violated the Sixth Amendment. Courts are free, as they were before *Blakely* and *Booker*, to consider many aspects of a defendant's conduct in imposing a sentence, including relevant conduct, recidivism, and economic loss. Not all these aspects of sentencing must be found by a jury beyond a reasonable doubt. Therefore, Petitioner's ninth ground for relief is without merit. Respondent is entitled to summary judgment on this claim and it is dismissed with prejudice.

### G.iv. Ground Ten: Standard of Proof During Forfeiture Proceeding

Petitioner's tenth ground for relief asserts that his *Apprendi* rights were violated when the jury found for Respondent on its criminal forfeiture claim by a preponderance of the evidence

standard. This claim is without merit. The Fourth Circuit has held findings by juries during criminal forfeiture proceedings are to be made by the preponderance of the evidence standard. *United States v. Cherry*, 330 F.3d 658, 670 (4th Cir. 2003). Therefore, even it were not defaulted, Respondent is entitled to summary judgment as to this claim and it is dismissed with prejudice.

### III. Conclusion

For all the foregoing reasons, the court finds Respondent is entitled to summary judgment on all of Petitioner's claims.

**IT IS THEREFORE ORDERED** that Respondent's motion for summary judgment is hereby granted, and this petition dismissed with prejudice. Petitioner's request for an evidentiary hearing is denied.

**IT IS SO ORDERED**.

                         s/ Cameron McGowan Currie
                         CAMERON McGOWAN CURRIE
                         UNITED STATES DISTRICT JUDGE

Columbia, South Carolina
November 15, 2005